**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| TAMMY CHLUDZINSKI, individually and on Behalf of All Others Similarly Situated, | **Case No.** |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>**JURY TRIAL DEMANDED**</u> |
| MATERNAL AND FAMILY HEALTH SERVICES, INC., | |
| Defendant. | |

Plaintiff, Tammy Chludzinski ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against Defendant Maternal and Family Health Services, Inc. ("Defendant" or "MFHS") and alleges, upon personal knowledge as to her own actions and upon information and belief, including her counsels' investigations, as to all other matters, as follows:

## I.   NATURE AND SUMMARY OF THE ACTION

1.     This action stems from Defendant's failure to secure the sensitive personal information of its current and former customers, and other consumers for whom Defendant performed services.

2.     It is believed that from August 21, 2021 and April 4, 2022, a third party actor gained entry to Defendant's computer systems and exfiltrated data ("Data Breach").  As a result of the Data Breach, Defendant allowed that third party to unlawfully acquire data of approximately 461,070 individuals.

3.      Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard sensitive personally identifiable information provided by and belonging to their customers, including, without limitation, name, addresses, dates of birth, social security numbers, driver's license numbers, financial account/payment card information, usernames and passwords ("PII"). Additionally, Plaintiff and Class Members suffered a loss of medical information and/or health insurance information, and any other protected health information ("PHI") as protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

4.      On January 5, 2023, Defendant, through its website, stated that its security had been breached.[1]

5.      Defendant said that it had first learned of the Data Breach on April 4, 2022, and that it had been subject to a sophisticated ransomware incident that resulted in the inadvertent exposure of information.

6.      It is unknown what spurred Defendant to announce that its security had been breached, considering that it had been sitting on the information for over eight months.

7.      Defendant's delayed response adversely affected Plaintiff and other class members as they could have undertaken proactive measures to secure their PII and PHI. Instead, Defendant sat on this important information to the detriment of Plaintiff and the Class.

8.      Plaintiff brings this action on behalf of all persons whose PII and PHI was compromised as a result of Defendant's failure to: (i) adequately protect the PII and PHI of Plaintiff and Class members; (ii) warn Plaintiff and Class members of their inadequate information security practices; and (iii) effectively secure hardware containing protected PII and PHI using reasonable and effective security procedures free of vulnerabilities. Defendant's conduct amounts

---

[1] https://www.mfhs.org/important-information-about-maternal-family-health-services-2022-cybersecurity-incident/

to at least negligence and violates federal and state statutes designed to prevent or mitigate this very harm.

9.      Plaintiff and Class Members have suffered actual and present injuries as a direct result of the Data Breach, including: (a) theft of their PII and PHI; (b) costs associated with the detection and prevention of identity theft for their respective lifetimes; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of the Data Breach; (d) invasion of privacy; (e) the present and/or imminent injury arising from actual and/or potential fraud and identity theft posed by their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (f) damages to and diminution in value of their personal data entrusted to Defendant on the mutual understanding that Defendant would safeguard their PII and PHI against theft and not allow access to and misuse of their personal data by others; and (g) the continued risk to their PII and PHI, which remains in the possession of Defendant, and which is subject to further injurious breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII and PHI. Plaintiff and Class Members, at the very least, are entitled to damages and injunctive relief tailored to address the vulnerabilities exploited in the breach, and designed to protect Plaintiff and Class Members' PII and PHI, as well as an order directing the destruction and deletion of all PII and PHI for which Defendant cannot demonstrate a reasonable and legitimate purpose for continuing to maintain possession of such PII and PHI.

10.      Defendant understands the need to protect the privacy of their customers and use security measures to protect their customers' information from unauthorized disclosure and potential fraud.

11.     Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff's and Class members' PII and PHI was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use.

12.     As a result of Defendant's actions, the PII and PHI of Plaintiff and Class Members was compromised through access to and exfiltration by an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they are entitled to injunctive and other equitable relief.

13.     Plaintiff by this action seeks compensatory damages together with injunctive relief to remediate Defendant's failures to secure their and the other Class Members' PII and PHI, and to provide damages, among other things, for Plaintiff and Class Members to secure identity theft insurance, and credit repair services for Class Members' respective lifetimes to protect the Class of Data Breach victims from identity theft and fraud.

## II.     JURISDICTION AND VENUE

14.     This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from Defendant to establish minimal diversity.

15.     Venue is proper under 18 U.S.C § 1391(b)(1) in this Judicial District as substantial acts and part of the events or omissions giving rise to the claims as alleged in this Class Action Complaint occurred in this District.

16.     The Middle District of Pennsylvania has personal jurisdiction over Defendant because Defendant is incorporated and has a principal place of business in this District, and a substantial part of the events giving rise to the claim occurred in this District.

## III.    PARTIES

17.     Plaintiff, Tammy Chludzinski, is a current patient using MFHS services.

18.     Plaintiff is a citizen and resident of the Commonwealth of Pennsylvania, currently residing in Old Forge. Plaintiff learned of the Data Breach because of a notice letter sent by Defendant, informing her that a third party may have unlawfully acquired her information.

19.     Defendant, Maternal and Family Health Services, Inc., is incorporated under the laws of the Commonwealth of Pennsylvania, with its principal office located at 15 Public Square, Suite 600, Wilkes Barre, Pennsylvania 18701.

## IV.    FACTUAL ALLEGATIONS

20.     Defendant is a nonprofit organization that provides healthcare and family planning services in the Commonwealth of Pennsylvania, and operates throughout Northeastern Pennsylvania.

21.     As part of Defendant's business of providing healthcare and family planning services, patients must provide Defendant with PII and PHI, including but not limited to:

    a.     Name;
    b.     Address;
    c.     Contact Information;
    d.     Date of Birth;

    e.       Social Security Number;

    f.        Driver's License or Government Identification;

    g.      Banking and/or Credit Card Information;

    h.      Medical History; and

    i.         Health Insurance Information and Coverage.

22.    As part of Defendant's regular course of business, Defendant created and stored medical records and other PHI as protected by HIPAA.

23.    Defendant possessed the PII and PHI of Plaintiff and Class Members within its computer systems.

24.    Defendant implicitly and/or explicitly represented to Plaintiff and Class Members, that their PII and PHI would be secured.[2]

25.    Defendant had duties and obligations through common law, federal regulations, contracts, industry standards, and their representations to Plaintiff and Class Members that Defendant would adopt reasonable measures to protect the PII and PHI of Plaintiff and Class Members from third party actors.

### *The Data Breach*

26.    On January 5, 2023, Defendant announced for the first time that it had been subject to the Data Breach.

27.    At or about that same time, Defendant began notifying Plaintiff and Class Members via U.S. Mail that their data had been stolen, informing them that their information had been stolen, and steps that individuals can take to protect their personal information such as the implementation of fraud alerts and security freezes.

---

[2] https://www.mfhs.org/disclaimer-privacy-policy/

28.     This data breach letter failed to explain why Defendant was unable to detect the Data Breach for over eight months, the remedial measures undertaken once knowledge of the breach occurred, and why Defendant did not notify Plaintiff and Class Members in a timely manner once Defendant discovered the breach.

29.     Upon information and belief, the PII and PHI was not encrypted prior to the Data Breach, because if it had been the third party actor would have exfiltrated only unintelligible data.

### *The Value of Personally Identifiable Information (PII) and Protected Health Information (PHI)*

30.     PII is very valuable to criminals, as evidenced by the prices they will pay for it on the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information is sold at prices ranging from $40 to $200, and bank details have a price range of $50 to $200.[3]

31.     Data breaches involving PHI, like the one at issue here, amplify the above-mentioned risks considerably because of the access that PHI provides criminals.

32.     Healthcare data is valuable on the black market because it often contains all of an individual's PII, as opposed to a single piece of information that may be found from a financial breach.

33.     According to Imprivata, a healthcare data record may be valued several times more on the black market, compared to the next highest value record.[4]

---

[3] *Your Personal Data Is for Sale on the Dark Web. Here's How Much It Costs,* Digital Trends, Oct. 16, 2019, *available at*:  https://www.digitaltrends.com/computing/personal-data-sold-on- the-dark-web-how-much-it-costs/

[4] *Hackers, Breaches, and the Value of Healthcare Data,* Imprivata, June 30, 2021, *available at*: https://www.imprivata.com/blog/healthcare-data-new-prize-hackers

34.     Experian reports that a stolen credit or debit card number can sell for \$5 to \$110 on the dark web.[5]

35.     Social Security numbers are among the most sensitive kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[6]

36.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against potential misuse of a Social Security number is not permitted; an individual instead must show evidence of actual, ongoing fraud to obtain a new number.

37.     Even then, a new Social Security number may not be effective. According to the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number

---

[5] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*:  https://www.experian.com/blogs/ask-experian/heres-how-much-your- personal-information-is-selling-for-on-the-dark-web/

[6] *Identity Theft and Your Social Security Number*, Social Security Administration, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf

very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[7]

38.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, in that situation, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—name, birthdate, financial history, and Social Security number.

39.     This data commands a much higher price on the black market. "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[8]

40.     Identity thieves may obtain driver's licenses, government benefits, medical services, and housing, or even give false information to police, among other forms of fraud.

41.     The PII and PHI of Plaintiff and Class Members was taken by hackers to engage in identity theft and/or to sell it to other criminals who will purchase the PII and PHI for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

42.     Further, there may be a time lag between when harm occurs and when it is discovered and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data
> may be held for up to a year or more before being used to commit
> identity theft. Further, once stolen data have been sold or posted on

---

[7] *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s- hackers-has-millionsworrying-about-identity-theft

[8] *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html

the Web, fraudulent use of that information may continue for years.
As a result, studies that attempt to measure the harm resulting from
data breaches cannot necessarily rule out all future harm.[9]

43.     Plaintiff and Class Members now face a lifetime of constant surveillance of their

financial and personal records, monitoring, and loss of rights. The Class is incurring and will

continue to incur such damage in addition to any fraudulent use of their PII and PHI.

### Medical Institutions Are Regularly Targeted

44.     Defendant was, or should have been, fully aware of the unique type and the

significant volume of data on their network, comprising individuals' detailed and confidential

personal information and, thus, the significant number of individuals who would be harmed by the

exposure of the unencrypted data.

45.     Data thieves regularly target companies like Defendant's due to the large volumes

of PII and PHI that they come into possession of.

46.     As custodians of Plaintiff's and Class Member's PII and PHI, Defendant knew or

should have known the importance of protecting their PII and PHI, and of the foreseeable

consequences if any data breaches occurred.

47.     Defendant's security obligations were especially important due to the substantial

up-tick of cyber-attacks and data breaches occurring in recent years.

48.     Furthermore, Defendant should have been vigilant in protecting its data as medical

institutions such as Defendant's, are especially targeted for cyber-attacks.

---

[9] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:*
http://www.gao.gov/new.items/d07737.pdf

49.     For the past several years, there has been a year over year trend of increased cyberattacks against healthcare institutions.[10]



50.     In 2022 alone, there were 707 healthcare data breaches, or an average of 59 breaches a month. The year 2022 ranked as the second-worst-ever year in terms of the number of reported breaches.[11]

51.     As such, with the increase in such attacks, Defendant knew or should have known that it was at high risk of cyberattack, and should have taken additional precautions.

### MFHS Violated Federal and State Laws

52.     MFHS had a legal duty to protect the data in their possession, and prevent third party actors from illegally accessing it, as required by: 1) federal regulations and state law, including but not limited to HIPAA and FTC regulations; 2) industry standards; and 3) agreements

---

[10] *2022 Healthcare Data Breach Report*, The HIPAA Journal, January 24, 2023, *available at:* https://www.hipaajournal.com/2022-healthcare-data-breach-report/

[11] *Id*.

with the affected parties such as Plaintiff, whether express or implied, regarding the safety and protection of the PII and PHI.

53.     HIPAA was enacted to improve the Medicare and Medicaid programs, the efficiency and effectiveness of the healthcare system, to encourage the development of a health information system and establish a set of standards and requirements for the transmission of certain health information.

54.     Defendant, as a health care provider who transmits any health information in electronic form in connection with a transaction covered by HIPAA, is considered a "Covered Entity." *See* 45 CFR § 160.103(3).

55.     HIPAA requires Covered Entities, such as Defendant's, to:

1) Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity creates, receives, maintains, or transmits;

2) Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

3) Protect against any reasonably anticipated uses or disclosures of such information that are not permitted or required under HIPAA.

*See* 45 CFR § 164.306, *et seq.*

56.     HIPAA also requires Covered Entities, such as Defendant's, to provide notification to every affected individual following the impermissible use or disclosures of any PHI without unreasonable delay and in no case later than 60 calendar days after discovery of a breach. *See* 45 CFR § 164.404, *et seq.*

57.     Furthermore, for breaches of unsecured PHI involving more than 500 residents of a State or jurisdiction, a Covered Entity must notify prominent media outlets without unreasonably

delay and in no case later than 60 calendar days after discovery of a breach. *See* 45 CFR § 164.406, *et seq.*

58.     As a Covered Entity, Defendant violated its legal obligations to comply with HIPAA requirements regarding both the protection of their PII and PHI, and failed to promptly notify the affected individuals.

59.     In the alternative, if Defendant did not violate HIPAA, Defendant violated FTC regulations, namely the "Health Breach Notification Rule." *See* 16 CFR § 318.1, *et seq.*

60.     The FTC requires non-HIPAA covered companies to provide similar notice to individuals affected by data breaches, as well as to provide notice to the FTC. *See* 16 CFR § 318.3, *et seq.*

61.     The FTC also requires non-HIPAA covered companies to provide similar notice to the media. *See* 16 CFR § 318.5, *et seq.*

62.     The FTC also requires non-HIPAA covered companies to provide notice of any data breach without unreasonable delay and in no case later than 60 days after the discovery of a breach of security. *See* 16 CFR § 318.4, *et seq.*

63.     Additionally, Defendant violated state statutes, such as Pennsylvania's Breach of Personal Information Notification Act ("BPINA"). *See* 73 P.S. § 2301, *et seq.*

64.     BPINA requires any organization that maintains, stores or manages PII belonging to Pennsylvania residents to provide notice of any data breach without unreasonable delay. *See* 73 P.S. § 2303, *et seq.*

65.     Additionally, BPINA requires organizations to notify all consumer reporting agencies of the data breach without unreasonable delay. *See* 73 P.S. § 2305, *et seq.*

66.     In the event that the affected class of affected individuals exceeds 175,000, BPINA allows organizations to provide substitute notice through e-mail notices, conspicuous posting of the notice on the organization's website, and notification to major statewide media. *See* 73 P.S. § 2302, *et seq*.

67.     Additionally, a violation of BPINA is considered an unfair or deceptive act or practice in violation of the Pennsylvania Unfair Trade Practices & Consumer Protection Law ("UTPCPL"). 73 P.S. § 2308, *et seq*.

68.     As Defendant failed to notify the public of the Data Breach, for nine months, Defendant is in violation of Federal and State laws in failing to timely notify affected individuals, media, and the government of the Data Breach in a timely manner.

***Common Injuries and Damages to Plaintiff and Class Members***

69.     Although Defendant has offered identity monitoring services for a limited time, the offered services are inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the highly sensitive nature of the PII and PHI at issue here.

70.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures to protect the PII and PHI of Defendant's current and former customers.

71.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members are presently experiencing and will continue experiencing actual harm from fraud and identity theft.

72.     Plaintiff and Class Members are presently experiencing substantial risk of out-of-pocket fraud losses, such as loans opened in their names, tax return fraud, and utility bills opened in their names, and similar identity theft.

73.     Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their PII and PHI as potential fraudsters could use that information to target such schemes more effectively to Plaintiff and Class Members.

74.     Plaintiff and Class Members are also incurring and may continue incurring out-of-pocket costs for protective measures such as credit monitoring fees (for any credit monitoring obtained in addition to or in lieu of the inadequate monitoring offered by Defendant), credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

75.     Plaintiff and Class Members also suffered a loss of value of their PII and PHI when it was acquired by the cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

76.     Plaintiff and Class Members have suffered actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

a.     Finding fraudulent loans, insurance claims, tax returns, and/or government benefit claims;

b.     Purchasing credit monitoring and identity theft prevention;

c.     Placing 'freezes' and 'alerts' with credit reporting agencies;

d.     Spending time with financial institution or government agencies to dispute fraudulent charges and/or claims;

e.     Contacting financial institutions and closing or modifying financial accounts; and

f.     Closely reviewing and monitoring Social Security number, bank accounts, payment card statements, and credit reports for unauthorized activity for years to come.

77.     Moreover, Plaintiff and Class Members have an interest in ensuring that their PII and PHI, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing sensitive and confidential personal, and/or financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

78.     Further, as a result of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their PII and PHI may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

79.     As a direct and proximate result of Defendant's actions and inactions, Plaintiff and  Class Members have suffered a loss of privacy and are at a substantial and present risk of harm.

**IV.     CLASS ACTION ALLEGATIONS**

80.     Plaintiff brings this action as a class action pursuant to Rule 23 *et seq.* of the Federal Rules of Civil Procedure on behalf of the Class.

81.     Plaintiff propose the following Class Definition:

**All individuals whose PII AND PHI was compromised in the Data Breach as described in Defendant's notice to Plaintiff and Class Members.**

82.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, members, affiliates, officers and directors, and any entity in

which a Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members and staff.

83.     Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

84.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

85.     Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These questions include but are not limited to:

   a.     Whether Defendant failed to adequately safeguard the PII and PHI of Plaintiff and Class Members;

   b.     Whether and to what extent Defendant had a duty to protect the PII and PHI of Plaintiff and Class Members;

   c.     Whether Defendant had a duty not to use the PII and PHI of Plaintiff and Class Members for non-business purposes;

   d.     Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII and PHI had been compromised;

   e.     Whether Defendant failed to implement and maintain reasonable security procedures and practices adequate to protect the information compromised in the Data Breach, considering its nature and scope;

   f.     Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

   g.     Whether Defendant violated state statutes as alleged herein;

h.   Whether Defendant engaged in unfair, unlawful, or deceptive practices, including by failing to safeguard the PII and PHI of Plaintiff and Class Members;

i.   Whether Plaintiff and Class Members are entitled to damages as a result of Defendant's wrongful conduct;

j.   Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

k.   Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

86.   Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendant's wrongful conduct.

87.   Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff will fairly and adequately represent and protect the interests of the Class Members. No Plaintiff has a disabling conflict of interest with any other Member of the Class. Plaintiff seeks no relief that is antagonistic to the Members of the Class, and the infringement of rights and the damages they have suffered are typical of other Class Members. Plaintiff also has retained counsel experienced in complex class action litigation, and they intend to prosecute this action vigorously.

88.   As provided under Fed. R. Civ. P. 23(b)(2), Defendant have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct in relation to the Class and making final injunctive and corresponding declaratory relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly, and Plaintiff challenges these policies by reference to Defendant's conduct with respect to the Class as a whole.

89.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Furthermore, as the damages suffered by individual Class

members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

90.    Consistent with Fed. R. Civ. P. 23(b)(3), class treatment is superior to all other available methods for the fair and efficient adjudication of this controversy. Among other things, it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Moreover, class action treatment will permit the adjudication of relatively modest claims by Class Members who could not individually afford to litigate a complex claim against large corporations such as Defendant. Prosecuting the claims pleaded herein as a class action will eliminate the possibility of repetitive litigation. There will be no material difficulty in the management of this action as a class action.

91.    Particular issues, such as questions related to Defendant's liability, are also appropriate for certification under Fed. R. Civ. P. 23(c)(4) because the resolution of such common issues would materially advance the resolution of this matter and the parties' interests therein.

92.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1), in that the prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. Prosecution of separate actions by Class Members also would create the risk of adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

## COUNT I
## NEGLIGENCE
### (On Behalf of Plaintiff and the Class Against Defendant)

93.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

94.     Plaintiff brings this claim on behalf of herself and the Class.

95.     As a condition of using the service of Defendant or its partners or affiliates, Plaintiff and the Class were required to provide and entrust Defendant with certain PII and PHI, including their name, birthdate, address, loan number, Social Security number, and other information.

96.     Plaintiff and the Class entrusted their PII and PHI to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PII and PHI for business purposes only, and/or not disclose their PII and PHI to unauthorized third parties.

97.     By undertaking the duty to maintain and secure this data, sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their systems and networks—and Plaintiff and Class Members' PII and PHI held within it—to prevent disclosure of the information, and to safeguard the information from cyber theft.

98.     Defendant had full knowledge of the sensitivity of the PII and PHI and the types of harm that Plaintiff and the Class could and would suffer if the PII and PHI were wrongfully disclosed or obtained by unauthorized parties.

99.     Defendant knew or reasonably should have known that its failure to exercise due care in the collecting, storing, and using of consumers' PII and PHI involved an unreasonable risk of harm to Plaintiff and the Class, including harm that foreseeably could occur through the criminal acts of a third party.

100.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that Plaintiff and Class Members' information in their possession was adequately secured and protected.

101.    Defendant also had a duty to exercise appropriate practices to remove former customers' PII and PHI that they were no longer required to retain pursuant to regulations.

102.    Defendant had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff and the Class's PII and PHI, and to employ proper procedures to prevent the unauthorized dissemination of the PII and PHI of Plaintiff and the Class.

103.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII and PHI, a mandatory step in receiving services from Defendant. While this special relationship exists independent from any contract, it is recognized by Defendant's Privacy Policies, as well as applicable laws and regulations. Specifically, Defendant actively solicited and gathered PII and PHI as part of its business and was solely responsible for and in the position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class members from a resulting data breach.

104.    Defendant was subject to an independent duty, untethered to any contract between Defendant and Plaintiff and the Class, to maintain adequate data security.

105.     A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

106.     Defendant also had a common law duty to prevent foreseeable harm to others. Plaintiff and the Class were the foreseeable and probable victims of Defendant's inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII and PHI of Plaintiff and the Class, the critical importance of adequately safeguarding that PII and PHI, and the necessity of encrypting PII and PHI stored on Defendant's systems. It was foreseeable that Plaintiff and Class members would be harmed by the failure to protect their personal information because hackers are known to routinely attempt to steal such information and use it for nefarious purposes.

107.     Defendant's conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant's wrongful conduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included their decision not to comply with industry standards for the safekeeping of Plaintiff and the Class's PII and PHI, including basic encryption techniques available to Defendant.

108.     Plaintiff and the Class had and have no ability to protect their PII and PHI that was in, and remains in, Defendant's possession.

109.     Defendant was in a position to effectively protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

110.     Defendant had and continues to have a duty to adequately disclose that the PII and PHI of Plaintiff and the Class within Defendant's possession was compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was

necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII and PHI by third parties.

111.    Defendant has admitted that the PII and PHI of Plaintiff and the Class was wrongfully accessed by unauthorized third persons as a result of the Data Breach.

112.    Defendant, through its actions and inaction, unlawfully breached their duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII and PHI of Plaintiff and the Class when the PII and PHI was within Defendant's possession or control.

113.    Defendant improperly and inadequately safeguarded the PII and PHI of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

114.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect its current and former customers' PII and PHI in the face of increased risk of theft.

115.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of their current and former customers' PII and PHI.

116.    Defendant, by its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

117.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the PII and PHI of Plaintiff and the Class would not have been compromised.

118.    There is a close causal connection between (a) Defendant's failure to implement security measures to protect the PII and PHI of Plaintiff and the Class and (b) the harm or risk of imminent harm suffered by Plaintiff and the Class. Plaintiff and the Class's PII and PHI was accessed and exfiltrated as the direct and proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII and PHI by adopting, implementing, and maintaining appropriate security measures.

## COUNT II
### Negligence *Per Se*
### (On Behalf of Plaintiff and the Class Against Defendant)

119.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

120.    Defendant's violation of federal law, including HIPAA and the FTC Health Breach Notification Rule, constitutes negligence *per se*.

121.    Plaintiff and the Class are within the class of persons that HIPAA and the FTC Health Breach Notification Rule was intended to protect.

122.    The harm that occurred as a result of the Data Breach is the type of harm that HIPAA and the FTC Health Breach Notification Rule was intended to guard against.

123.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their PII and PHI is used; (iii) the compromise, publication, and/or theft of their PII and PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, fraud, and/or unauthorized use of their PII and PHI for Plaintiff and Class Members' respective lifetimes; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to

mitigate the present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII and PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the current and former customers' PII and PHI in their continued possession; (viii) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of PII and PHI as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class Members; and (ix) loss of privacy and embarrassment due to private medical information being known by third party actors.

124.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

125.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PII and PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI in their continued possession.

126.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class are now at an increased risk of identity theft or fraud.

127.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class are entitled to and demand actual, consequential, and nominal damages and injunctive relief to be determined at trial.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class Against Defendant)**

128.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

129.    Plaintiff brings this claim on behalf of herself and the Class.

130.    Defendant acquired and maintained the PII and PHI of Plaintiff and the Class, including names, birthdates, addresses, loan numbers, Social Security numbers, and information provided in connection with Defendant's business.

131.    At the time Defendant acquired the PII and PHI of Plaintiff and the Class, there was a meeting of the minds and a mutual understanding that Defendant would safeguard the PII and PHI and not take unjustified risks when storing the PII and PHI.

132.    Plaintiff and the Class would not have entrusted their PII and PHI to Defendant had they known that Defendant would not properly secure the PII and PHI, and not delete the PII AND PHI that Defendant no longer had a reasonable need to maintain.

133.    Defendant further implicitly promised to comply with industry standards and to ensure that Plaintiff and the Class Members' PII and PHI would remain protected.

134.    Implicit in the agreements between Plaintiff and the Class and Defendant to provide PII and PHI, was the latter's obligation to:

a.      Use such PII and PHI for business purposes only;

b.      Take reasonable steps to safeguard the PII and PHI;

     c.     Prevent unauthorized disclosures of the PII and PHI;

     d.     Provide Plaintiff and the Class with prompt and sufficient notice of any and all unauthorized disclosure or uses; and

     e.     Retain the PII and PHI only under conditions that kept such information secure and confidential.

135.     In collecting and maintaining the PII and PHI of Plaintiff and the Class and publishing its privacy policies, Defendant entered into implied contracts with Plaintiff and the Class requiring Defendant to protect and keep secure the PII and PHI of Plaintiff and the Class.

136.     Plaintiff and the Class fully performed their obligations as required with Defendant.

137.     Defendant breached the implied contract it made with Plaintiff and the Class by failing to protect and keep private the financial information of Plaintiff and the Class, including failing to;

     a.     Encrypt or tokenize the sensitive PII and PHI of Plaintiff and the Class;

     b.     Delete such PII and PHI that Defendant no longer had reason to maintain;

     c.     Eliminate the potential accessibility of the PII and PHI where such accessibility was not justified; and

     d.     Otherwise review and improve the security of the network system that contained such PII and PHI.

138.     As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer): ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; additional time spent scrutinizing bank statements, credit card statements, and

credit reports; expenses and/or time spent initiating fraud alerts, credit freezes; decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

139.    As a direct and proximate result of Defendant's breach of implied contract, Plaintiff and the Class are at an increased risk of identity theft or fraud.

140.    As a direct and proximate result of Defendant's breach of implied contracts, Plaintiff and the Class are entitled to and demand actual, consequential, and nominal damages and injunctive relief, to be determined at trial.

## COUNT IV
## BREACH OF FIDUCIARY DUTY
### (On Behalf of Plaintiff and the Class Against Defendant)

141.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

142.    Plaintiff bring this claim on behalf of herself and the Class.

143.    A relationship existed between Defendant and Plaintiff and the Class in which Plaintiff and the Class put their trust in Defendant to protect the PII and PHI of Plaintiff and the Class and Defendant accepted that trust.

144.    Defendant breached the fiduciary duty that they owed to Plaintiff and the Class by failing to act with the utmost good faith, fairness, and honesty, failing to act with the highest and finest loyalty, and failing to protect the private information of Plaintiff and the Class.

145.    Defendant's breach of fiduciary duty was a legal cause of damage to Plaintiff and the Class.

146.    But for Defendant's breach of fiduciary duty, the damage to Plaintiff and the Class would not have occurred.

147.    Defendant's breach of fiduciary duty contributed substantially to producing the damage to Plaintiff and the Class.

148.    As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiff and the Class are entitled to and demand actual, consequential, and nominal damages and injunctive relief.

**COUNT V**
**VIOLATION OF STATE STATUTES**
**(On Behalf of Plaintiff and the Class Against Defendant)**

149.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

150.    Legislatures in the states and jurisdictions listed below have enacted data breach statutes. These statutes generally require that any person or business conducting business within the state that owns or manages computerized data that includes personal information shall disclose any breach of the security of the system to any resident of the state whose personal information was unlawfully acquired by an unauthorized person. These statutes also require that the disclosure of the breach be made in the most expedited time possible and without unreasonable delay.

151.    Defendant's Data Breach is covered under the meaning of the below mentioned state data breach statutes, and the data that was unlawfully acquired was protected and covered by the below data breach statutes.

152.    Plaintiff's and Class Members' PII and PHI constitute personal information as covered under the state data breach statutes, and any loss of such PII and PHI is governed by the state data breach statutes.

153.    Defendant failed to timely notify and disclose the Data Breach to affected customers, including Plaintiff and the Class.

154.    As a direct and proximate result of Defendant's failure to notify Plaintiff and the Class, as required by the below state data breach statutes, Plaintiff and the Class were injured. Had Defendant provided timely and accurate notice of the Data Breach, Plaintiff and the Class could have mitigated any injuries that may have arose from Defendant's unreasonable delay to provide notice.

155.    Defendant's failure to protect Plaintiff and the Class's PII and PHI and subsequent failure to timely notify Plaintiff and the Class of the Data Breach, violated the following state data breach statutes (including any revisions, modifications, and additions):

a.      Alaska Stat. § 45.48.010(a), et seq.;

b.      Ark. Code § 4-110-105(a), et seq.;

c.      Cal. Civ. Code § 1798.83(a), et seq.;

d.      Colo. Rev. Stat. § 6-1-716(2), et seq.;

e.      Conn. Gen. Stat. § 36a-701b(b), et seq.;

f.      Del. Code Tit. 6 § 12B-102(a), et seq.;

g.      D.C. Code § 28-3852(a), et seq.;

h.      Fla. Stat. § 501.171 (4), et seq.;

i.      Ga. Code § 10-1-912(a), et seq.;

j.      Haw. Rev. Stat. § 487N-2(a), et seq.;

k.      Idaho Code § 28-51-105(a), et seq.;

l.      815 ILCS 530/1, et seq.;

m.      Iowa Code § 715C.2(1), et seq.;

n.      Kan. Stat.§ 50-7a02(a), et seq.;

o.      Ky. Rev. Stat. § 365. 735(2), et seq.;

p.      La. Rev. Stat. § 51:3074(A), et seq.;

q.      Md. Code, Commercial Law § 14-3504(b), et seq.;

r.      Mass. Gen. Laws Ch. 93H § 3(a), et seq.;

s.      Mich. Comp. Laws § 445.72(a), et seq.;

t.      Minn. Stat. § 325E.61(1)(a), et seq.;

u.      Mont. Code § 30-14-1704(a), et seq.;

v.      Neb. Rev. Stat. § 87-803(a), et seq.;

w.      Nev. Rev. Stat. § 603A.220(1), et seq.;

x.      N.H. Rev. Stat. § 359-C:20(1)(a), et seq.

y.      N.J. Stat. § 56:8-163(a), et seq.;

z.      N.C. Gen. Stat. § 75-65(a), et seq.;

aa.     N.D. Cent. Code § 51-30-02, et seq.;

bb.     Okla. Stat. Tit. 24 § 163(A), et seq.;

cc.     Or. Rev. Stat. § 646A.604(1), et seq.;

dd.     73 Pa. Stat. and Cons. Stat. Ann.§ 2301 et seq.

ee.     R.I. Gen. Laws § 11-49.3-4, et seq.;

ff.     S.C. Code § 39-1-90(A), et seq.;

gg.     Tenn. Code § 47-18-2107(b), et seq.;

hh.     Tex. Bus. & Com. Code § 521.053(b), et seq.;

ii.     Utah Code § 13-44-202(1), et seq.;

jj.     Va. Code § 18.2-186.6(B), et seq.;

kk.     Wash. Rev. Code § 19.255.010(1), et seq.;

ll.     Wis. Stat. § 134.98(2), et seq.;

mm.     Wyo. Stat. § 40-12-502(a), et seq.

156.    Plaintiff and the Class seek all remedies available under their respective state data

breach statutes.

<u>COUNT VI</u>
**DECLARATORY JUDGMENT**
**(On Behalf of Plaintiff and the Class Against Defendant)**

157.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

158.    Plaintiff bring this claim on behalf of herself and the Class.

159.    The Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq*., authorizes this Court to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes as applicable here.

160.    Defendant owes duties of care to Plaintiff and Class Members, which require Defendant to adequately secure Plaintiff and the Class Member's PII and PHI.

161.    Due to the Data Breach, Plaintiff and the Class Member's PII and PHI have been unnecessarily put at risk.

162.    An actual controversy has arisen in the wake of the Data Breach regarding Defendant's present and prospective common law and other duties to reasonably safeguard Plaintiff and the Class Members' PII and PHI and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and the Class from further data breaches that compromise their PII and PHI.

163.    Accordingly, Plaintiff and the Class request this Court under the Declaratory Judgment Act to enter a judgment declaring the following:

      a.      Defendant owes a legal duty to secure the PII and PHI of its former and current customers of Defendant;

      b.      Defendant has breached its duty to Plaintiff and the Class by allowing the Data Breach to occur;

c.     Defendant continues to breach its legal duty by failing to employ reasonable means to secure the PII and PHI of Defendant's former and current customers.

d.     Defendant's ongoing breaches of said duty continue to cause Plaintiff and the Class harm.

164.   Plaintiff and the Class, therefore, seek a declaration that (1) each of Defendant's existing security measures do not comply with their obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect consumers' PII and PHI, and (2) to comply with their duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

a.     Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b.     Engaging third-party security auditors and internal personnel to run automated security monitoring;

c.     Auditing, testing, and training their security personnel regarding any new or modified procedures;

d.     Segmenting user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendant's systems;

e.     Conducting regular database scanning and security checks;

f.     Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

g.     Purchasing credit monitoring services for Plaintiff and Class Members for their respective lifetimes; and

h.     Meaningfully educating Plaintiff and Class Members about the threats they face as a result of the loss of their PII and PHI to third parties, as well as the steps they must take to protect themselves.

33

165.    The Court should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with the law and industry standards to protect Plaintiff and Class Members' PII and PHI.

166.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach of Defendant's systems or networks.  The risk of another breach is real, immediate, and substantial.

167.    The hardship to Plaintiff and the Class if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued.  If another data breach occurs, Plaintiff and the Class will likely be subjected to fraud, identity theft, and other harms described herein.  But, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is minimal given it has pre-existing legal obligations to employ these measures.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and all Class Members, request judgment against Defendant and that the Court grant the following:

a.    An Order certifying the Class, as defined herein, and appointing Plaintiff and their counsel to represent the Class;

b.    Equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff and the Class Members' PII and PHI, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and the Class Members;

c.    Injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

1)    Prohibiting Defendant from engaging in the wrongful and unlawful  acts described herein;

2)    Requiring Defendant to protect, including through encryption, all data collected through the course of their business in

a c c o r d a n c e with all applicable regulations, industry standards, and federal, state or local laws;

3) Requiring Defendant to provide out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI for Plaintiff and Class Members' respective lifetimes;

4) Requiring Defendant to delete, destroy, and purge the PII and PHI of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

5) Requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII and PHI of Plaintiff and Class Members;

6) Prohibiting Defendant from maintaining Plaintiff and Class Members personally identifying information on a cloud-based database;

7) Requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by third-party security auditors;

8) Requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

9) Requiring Defendant to audit, test, and train their security personnel regarding any new or modified procedures;

10) Requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other areas of Defendant's systems;

11) Requiring Defendant to conduct regular database scanning and securing checks;

12) Requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personally identifying information, as well as protecting the personally identifying information of Plaintiff and Class Members;

13) Requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

14) Requiring Defendant to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personally identifying information;

15) Requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

16) Requiring Defendant to adequately educate all Class Members about the threats that they face as a result of the loss of their confidential PII and PHI to third parties, as well as the steps affected individuals must take to protect themselves;

17) Requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and, for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to Class Counsel, and to report any material deficiencies or noncompliance with the Court's final judgment;

d.    For an award of damages, including actual, statutory, consequential, punitive, and nominal damages, as allowed by law in an amount to be determined;

e.      For an award of reasonable attorneys' fees, costs, and litigation expenses, as allowed by law;

f.      For prejudgment interest on all amounts awarded; and

g.      Such other and further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated:  March 16, 2023

**BARRACK, RODOS & BACINE**

*/s/ Daniel E. Bacine*
Daniel E. Bacine (Bar No. 16742)
Jeffrey W. Golan (Bar No. 33729)*
Andrew J. Heo (Bar No. 326289)*
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel: (215) 963-0600
Fax: (215) 963-0838
dbacine@barrack.com
jgolan@barrack.com
aheo@barrack.com

and

John G. Emerson*
2500 Wilcrest Drive, Suite 300
Houston, TX 77042
Tel: (800) 551-8649
Fax: (501) 286-4659
jemerson@emersonfirm.com

*Attorneys for Plaintiff and the Proposed Class*

*\*pro hac vice applications forthcoming*